Tina TAYLOR, as Administratrix of
the Estate of Gary Lee Taylor,
Deceased, Appellee,

v.

John PAYNE, Appellee.

OKLAHOMA ELECTRIC
COOPERATIVE,
Appellant,

v.

BOARD OF COUNTY COMMISSIONERS
OF McCLAIN COUNTY, Oklahoma,
Appellee.

No. 76189.

Court of Appeals of Oklahoma,
Division No. 1.

March 8, 1994.

Michael C. Stewart, and, Michelle I. Mat-
tox, Stewart & Elder, Oklahoma City, for
appellant Oklahoma Elec. Co-op.

Bill Wilson, Pauls Valley and Robert A. Flagler, Flagler & Flagler, Norman, for appellee Tina Taylor.

William J. Molinsky, Jr., Don Manners Lawfirm, Oklahoma City, for appellee John Payne.

## MEMORANDUM OPINION

ADAMS, Judge:

Oklahoma Electric Cooperative, a public utility corporation, (OEC), appeals a trial court judgment based upon a jury verdict finding it 3.3% negligent for the wrongful death of Gary Lee Taylor. The trial court's judgment also denied OEC's claim against Appellees John Payne and McClain County. Because we conclude there was sufficient evidence to support the jury's verdict and find no reversible error in the instructions, we affirm the judgment against OEC in favor of Taylor. We affirm denial of indemnification by Payne, but we conclude OEC was entitled to indemnification by McClain County.

### COURT PROCEEDINGS

Appellee, Tina Taylor, as Administratrix of the Estate of Gary Lee Taylor, deceased, (Taylor) sued OEC and John Payne, doing business as Payne Truck Salvage (Payne). Taylor alleged Payne negligently stored a boom crane in a position where it was foreseeable that the boom would come in contact with the electric power lines over Payne's business premises. She also alleged OEC was negligent by its placement of electric power lines without insulation and by its failure to maintain the electric power lines at a sufficient height. Taylor claimed these acts caused the electrocution death of her husband on April 15, 1986.

Both defendants denied the allegations and raised contributory negligence, assumption of the risk and unavoidable accident as affirmative defenses. OEC filed a cross-claim against Payne and a third party petition against the Board of County Commissioners of McClain County (McClain County) alleging that they had permitted operation of the crane within 6 feet of its electric power lines and had failed to notify OEC prior to the activities conducted by the crane, all in violation of 63 O.S.1981 § 981, et seq. (the "six foot rule"). OEC claimed it was either entitled to complete indemnification or, in the alternative, to contribution from Payne and McClain County for any OEC liability to Taylor.

At trial, the jury heard evidence that Gary Taylor was electrocuted when the boom on a crane being operated by Danny Taylor struck an OEC power line which ran parallel to property owned by Payne. According to the evidence, both Gary and Danny Taylor were employees of McClain County who were working on and testing a crane owned by Payne which McClain County was interested in purchasing. OEC demurred to Taylor's evidence and moved for a directed verdict in its favor. The trial court denied both requests. The jury returned a verdict assessing Gary's negligence at 30.4%, Danny's at 40.8%, OEC's at 3.3%, Payne's at 10.8%, and McClain County's at 14.7%.[1] The jury also set total damages at $283,083. The trial court entered judgment against OEC for $9,506.74, plus interest and costs.

OEC moved for judgment notwithstanding the verdict, new trial and indemnification against Payne and McClain County. The trial court denied all three motions, and this appeal followed. For reversal of the judgment in favor of Taylor, OEC argues there was insufficient evidence to support the jury's verdict and that the trial court submitted improper instructions. On the indemnification claim, OEC argues it was entitled to indemnification by Payne and McClain County as a matter of law.

### SUFFICIENCY OF THE EVIDENCE

■ In ruling on OEC's demurrer to the evidence and directed verdict request, the trial court was required to consider as true

---

1. The record contains no explanation why the jury was asked to assess the negligence of the Taylors separately from the negligence of their employer, McClain County, when it appeared uncontroverted that the Taylors were acting in the course and scope of their employment in operating the crane. However, no allegation of error raises this issue.

all evidence and all inferences reasonably drawn therefrom favorable to Taylor and to disregard any conflicting evidence favorable to OEC. In reviewing the trial court's decision, we must examine the record and make a determination as to whether there is any evidence reasonably tending to support the judgment. *Trett v. Oklahoma Gas & Elec. Co.,* 775 P.2d 275 (Okla.1989).

OEC argues *Trett* requires evidence of actual notice to OEC that the crane was going to be operated within six feet of the electrical lines before liability may be imposed because it established that the lines were in compliance with requirements by the Oklahoma Corporation Commission (OCC) and the National Electric Safety Code (NESC). Although we agree that the record contains no evidence of actual notice, we do not interpret *Trett* as requiring actual notice.

In *Trett,* OG & E and Dolese negotiated a contract in which OG & E agreed to commence work to relocate high voltage power lines over a Dolese worksite on a certain date. Five days before the agreed date, one of Dolese's employees, while holding a steel reinforcing bar on a concrete panel being moved by a front end loader, was electrocuted when the front end loader backed into the electric power lines. When reviewing whether the evidence supported the jury verdict in favor of Trett, the Court held that:

> The essence required to establish the existence of a duty is foreseeability of the consequences of the breach of the alleged duty. To establish liability on the part of O.G. & E. in the present case, Trett would necessarily have had to offer evidence to establish that it was foreseeable to O.G. & E. that Dolese would undertake construction activities in violation of state statutes *and* would also ignore the contractual provisions agreed to between O.G. & E. and Dolese in conformance with those same statutes. Trett failed to offer any evidence to establish this critical point. No evidence was offered to show that O.G. & E. had actual notice, *which would have been in conflict with the contractual negotiations,* that Dolese had actually begun construction activities in the area of O.G. & E.'s lines prior to the date of the accident.

We would find such notice essential to establish exceptional circumstances which would create a duty on the part of O.G. & E. to anticipate that compliance with state law and regulations would be insufficient to fulfill its duty to the public. (Emphasis added)

As we read *Trett,* the Oklahoma Supreme Court concluded that reasonable people could not consider it foreseeable that Dolese would commence construction in the area of OG & E's power lines prior to the date agreed upon without informing OG & E. The Court required actual notice of a change in Dolese's plans.

The facts of this case do not lead to the same conclusion. According to the testimony of OEC's Loss Control Coordinator, James Horton, various OEC employees had gone on inspection and maintenance tours to inspect the power lines at Payne's property and that those employees would "have seen that there are cranes and dump trucks and other instrumentalities that can go up high enough to come in contact with those lines." When asked if OEC had done anything to protect any of the people that might be operating cranes or dump trucks in that area, Horton said, "No, Sir."

We cannot say that no reasonable person would conclude that OEC could not have reasonably foreseen that some person operating the machinery on Payne's property would do so in a manner which violated the "six foot rule." This evidence, combined with other evidence that if the lines had been higher this accident would not have occurred, is sufficient "exceptional circumstances" to allow the jury to find some OEC liability despite the Taylors' violation of the "six foot rule."

## ALLEGED INSTRUCTION ERRORS

Our conclusion that there was sufficient evidence on the liability issue necessarily disposes of OEC's claim that the trial court erred in giving Instructions No. 7, 43, 45, 46 and 47 because there was no evidence of OEC's negligence. Also, OEC's claim of error in Instructions No. 32, 33, 34 and 35 is waived because this alleged error was not

identified in OEC's petition in error or motion for new trial. *Horizons, Inc. v. KEO Leasing Co.,* 681 P.2d 757 (Okla.1984).

■ OEC argues Instruction No. 31 misstated the law. Instruction No. 31, set forth *in totem verbis,* stated:

> You are instructed that even in spite of the so called six foot law, electric companies must continue to exercise a high degree of care in building and operating its [sic] equipment.

OEC argues the instruction did not accurately quote the following holding in *Kimery v. Public Service Co. of Oklahoma,* 622 P.2d 1066, 1071 (Okla.1981):

> The law applies to all persons who may work in the vicinity of high voltage electrical conductors and imposes upon them a burden of care for the purpose of promoting public safety and welfare. An electric utility must continue to exercise a high degree of care in building, operating and maintaining its equipment.

As a result, OEC argues, the instruction improperly emphasized its duty without stating the correct rule of *Kimery,* i.e., everyone owes a high degree of care around high voltage lines. However, the duty placed on the public by the "six foot rule" was clearly explained in another instruction and was obviously considered by the jury as shown by its assessment of the decedent's contributory negligence as 30.4% and his brother's negligence as 40.8%. Considering the jury instructions as a whole, we cannot conclude the jury was misled by Instruction 31. *See Wooten v. Hall,* 442 P.2d 334 (Okla.1968).

■ OEC also claims there was no evidence to support all of the elements of damages in Instruction No. 7, specifically items numbered 2–6, which included the grief of the surviving spouse, the loss of society, services, companionship, and marriage relationship of the husband, the grief of the children, the loss of companionship and parental care, training, guidance, or education that would have been forthcoming from the parent to the children, the loss of companionship of the parent by the children, and the pain and suffering of decedent. Although a trial court must instruct on issues raised by the pleadings and supported by the evidence, a judgment is not to be disturbed on appeal unless it clearly appears that the giving or the refusal to give the allegedly erroneous instructions either caused a miscarriage of justice or led to a different verdict than would have been rendered but for the alleged error. *Nail v. Oklahoma Children's Memorial Hosp.,* 710 P.2d 755, 759 (Okla.1985).

Although the jury heard no precise evidence concerning the level of the emotional loss suffered by Taylor or her children as a result of Gary Taylor's death, the jury could properly infer that such damage occurred. Whether there was evidence that Gary Taylor endured pain and suffering is a closer question. However, OEC does not argue that the jury's verdict was excessive under the evidence adduced, and any error in instructing on this element of damages must be considered harmless. *Pine v. Robson,* 187 Okl. 679, 105 P.2d 530 (1940). OEC has not demonstrated any reversible error in the instructions to the jury.

## INDEMNIFICATION

■ OEC claims it is entitled to indemnification by Payne and McClain County because they violated the "six foot rule." McClain County filed no response to OEC's appeal and did not file a brief. Accordingly, we treat OEC's appeal as to McClain County as one submitted on the appellant's brief only. Under such circumstances, this Court is under no obligation to search the record to find some theory on which to sustain the trial court but will, ordinarily, reverse if the appellant's brief is reasonably supportive of the allegations of error. *Sneed v. Sneed,* 585 P.2d 1363 (Okla.1978).

The record clearly established that agents of McClain County, Gary and Danny Taylor, operated the crane so that it was possible to touch the energized power lines. In so doing, the Taylors violated § 981, and McClain County is responsible for the results of that violation. OEC's brief is reasonably supportive of the allegation that the trial court erred in denying indemnification by McClain County, and that portion of the trial court's judgment must be reversed.

■ The same analysis does not apply to Payne. OEC admits in its brief that Payne moved the crane parallel with and about 12 feet away from the electric power lines, but because the boom of the crane had the capability of projecting 40 feet, OEC argues that Payne specifically violated § 982. Considering this admission plus the evidence that Danny Taylor, who was not an employee of Payne, moved the boom from its resting or transport position resulting in contact with the power lines, we find this argument unpersuasive. Clearly, Payne did not move the crane, or any part thereof, within 6 feet of the high voltage overhead conductor as prohibited by § 982. The trial court did not err in denying indemnification by Payne.

## CONCLUSION

OEC has not shown any reversible error by the trial court which affects the judgment in favor of Taylor and against OEC or the denial of OEC's request for indemnity by Payne. However, the trial court's denial of indemnity by McClain County must be reversed. The portion of the trial court's judgment denying indemnity by McClain County is reversed. In all other respects, the trial court's judgment is affirmed, and the case is remanded for proceedings to determine the amount of indemnification due from McClain County.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

JONES, P.J., and HANSEN, J., concur.